UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KERRY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV1277 ERW |
| | ) | |
| UNITED FOOD AND COMMERCIAL | ) | |
| WORKERS, LOCAL UNION NO. 88, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff Kerry, Inc.'s ("Kerry") Motion for

Summary Judgment [ECF No. 14], and Defendant United Food and Commercial Workers, Local

Union No. 88's ("Union") Motion for Summary Judgment [ECF No. 18].

On July 18, 2012, Kerry filed a Complaint and Motion to Vacate Arbitration Award

against Union, pursuant to 28 U.S.C. § 301 of the Labor Management Relations Act, the Federal

Arbitration Act, 9 U.S.C. § 1, et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201, et

seq., asking the Court to vacate portions of a May 26, 2012 Decision and Arbitration Award, and

to declare that Kerry was deprived of a fair arbitration hearing and that portions of the Decision

and Arbitration Award are void for public policy because they exceed the scope of the arbitral

issues [ECF No. 1].

In its Answer to Plaintiff's Complaint and Motion to Vacate Arbitration Award,

Affirmative Defenses and Counterclaim to Enforce Arbitration Award [ECF No. 5], Union raises

several affirmative defenses, and asserts a Counterclaim, asking the Court to compel Kerry to

comply with the Decision and Arbitration Award.

I.      STATEMENT OF UNDISPUTED OR UNCONTROVERTED FACTS

The following fact statement is a recitation of undisputed facts taken from Plaintiff's Complaint and Motion to Vacate Arbitration Award [ECF No. 1],  Defendant United Food and Commercial Workers, Local Union No. 88's Answer to Plaintiff's Complaint and Motion to Vacate Arbitration Award, Affirmative Defenses and Counterclaim to Enforce Arbitration Award [ECF No. 5], Plaintiff's Answer to Counterclaim to Enforce Arbitration Award [ECF No. 9], Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment [ECF No. 16], Defendant's Statement of Uncontroverted Facts [ECF No. 20], Plaintiff's Answer to Defendant/Counterclaimant United Food and Commercial Workers, Local Union No. 88's Statement of Uncontroverted Facts [ECF No. 22], Defendant/Counterclaim Plaintiff's Response to Kerry Inc.'s Statement of Undisputed Material Facts [ECF No. 24], and the parties' uncontroverted or undisputed supporting exhibits for these pleadings.

Kerry is a private employer and a co-manufacturer of food products with a plant located in Affton, Missouri.  Union is a general labor union, located in St. Louis, Missouri.  Between January 20, 2011, and January 19, 2014, Kerry and Union had a collective bargaining agreement ("CBA").  Article 7 of the parties' CBA addresses the sole and exclusive rights of Kerry in the management of its business and the direction of the its working force, including, but not limited to:  the right to discipline, suspend, or discharge an employee, for just cause; and the right to maintain order and efficiency [ECF No. 16-3 at 3-4].  This article also states that "the exercise of all other managerial rights which the Company had prior to the signing of this Agreement, are all vested solely and exclusively in the Company, unless specifically limited or modified by the provisions of this Agreement" [ECF No. 16-3 at 4].

Kerry discharged employee and Union member Ron Shook ("Shook") from his position

as a "syrup mixer" on September 23, 2011.  Kerry's Affton plant maintained a Drug and

Alcohol-Free Work Policy ("the Policy"), in effect at the time of Shook's discharge, that states

the company's goal is "to maintain a productive work environment that is free from the effects of

alcohol and other drugs[,]" and its objective is "to have all of [its] employees report to work in a

condition to perform their duties safely and efficiently" [ECF No. 16-10 at 6].  Among other

things, the Policy states that, while on Kerry's premises, no employee "may use . . . or have in his

or her system alcohol or drugs."  The Policy also include the following language:

> Testing Current Employees – Post Accident and For Cause
>
> At company expense, Kerry will test current employees, unless otherwise
> prohibited by state law, for alcohol, drugs, and controlled substances when an
> employee:
>
> • Has a work-related injury or illness that causes lost time or requires off-
>   site treatment, or is involved in an occurrence that results in such an injury
>   to another.
> • Exhibits conduct or behavior that gives reasonable cause to believe they
>   may possess, control, or have in their system drugs or alcohol in company
>   controlled areas, on company-owned property, or while on duty.
> • Returns to work from a drug and alcohol rehabilitation program.
>   Screening tests are required for a reasonable period as part of completing
>   the rehabilitation program.
> • When involved in an accident resulting in injury or damage to company
>   products or property.

[ECF No. 1-2].  The Policy warns that a positive test result that is not satisfactorily explained by

the employee will result in discharge on the first offense, unless otherwise prohibited by state

law.

On September 15, 2011, Shook was about to report for his 10:30 a.m. work shift at

Kerry's Affton plant.  Shook went to the plant's locker room to change out of his street clothes

and into his work uniform.  While in the locker room, Shook accidently cut himself with a Kerry-

3

issued straight blade knife.  Shook started searching for a first aid kit, and encountered the plant superintendent, Rodriguez Black ("Black").  When Black asked Shook what was wrong, Shook responded that he had cut his finger.  After seeing the cut, Black determined that Shook needed to go to Concentra, a medical compensation facility where Kerry employees are sent for treatment of on-the-job injuries.

Dr. Eric Mai examined and treated Shook at Concentra.  During the course of his treatment at Concentra, Shook was given a post-accident drug test, which yielded a positive result for the presence of marijuana in his system.

Thereafter, on September 23, 2011, Shook was discharged for testing positive for an illegal drug, marijuana.  Union pursued a grievance of Shook's discharge, asserting that he had been discharged without just cause.  Kerry denied the grievance on October 12, 2011, finding that: 1) Shook had sustained a work-related injury; 2) Shook was properly sent to Concentra where a post-accident drug test was administered; and 3) the results of the drug test were positive for marijuana.  Kerry concluded that, based on Shook's positive drug result for marijuana, his discharge was proper.

Union next pursued arbitration of Shook's discharge, and an arbitration hearing was conducted by Arbitrator Thomas A. Cipolla on March 7, 2012.  In its opening statement, Union argued that Shook's injury did not require off-site medical treatment, asserting:

> The case is really that simple.  You would not have gone to seek medical treatment, you would not have taken a grandchild to seek medical treatment.  [Shook] should not have been taken for medical treatment.  Therefore, the positive test should have been thrown out because [Shook] shouldn't have been there in the first place.

During the hearing, the parties mutually agreed that the only issue upon which the arbitrator would be ruling would be whether Shook should have been sent to Concentra [ECF No. 16-7 at

4

13-14].  Union did not challenge Kerry's right to send employees for post-accident drug testing. As a post-arbitration remedy, Union requested that Kerry be ordered to reinstate Shook to work, and make him whole for all lost time.

In the Arbitration Decision and Award [ECF No. 16-10], Arbitrator Cipolla stated:  "It appears to me that given the 'just cause' standard in the CBA, the issue before me is whether the Company had just cause to terminate the Grievant, not whether or not he should have been sent to Concentra for treatment" [ECF No. 16-10 at 14].  He also remarked that it is "axiomatic that the main purpose of an employer drug and alcohol policy is to prevent the use of such products at work and also any impairment at work that results from the use of drugs and/or alcohol at work or away from work.  It is a paramount safety issue for employers."

Arbitrator Cipolla, stating that an employee covered by the CBA could not be terminated without "just cause," then made the following finding regarding Kerry's decision to send Shook to Concentra for medical treatment:

> In the instant matter, [Shook] had an accident just prior to starting his shift.  From all accounts, it does not appear to have been a serious matter.  Erring on the side of caution in this case by sending [Shook] to Concentra does not appear to me to be an arbitrary or capricious decision by management nor does it rise to the level of abuse of managerial discretion.

After making this finding, Arbitrator Cipolla stated that he had found no evidence showing that Shook was under the influence when he cut his finger, that Shook's injury was "borderline" as far as its need for medical attention, and that he did not know why a drug test was performed under the circumstances.  He further said that, even if "the drug test is part and parcel of the package of services rendered by Concentra for the Company and is administered to every employee who is treated for a work-related injury," Shook's positive result proved nothing about his impairment or immediate workplace safety concerns for Kerry.  Arbitrator Cipolla then stated

5

that he did not find "any rational relationship between the incident triggering the test and the possibility of drug use as a factor."  He found that the administration of the drug test in Shook's case was "unreasonable and uncalled for under all the relevant circumstances."  Concluding that the result of the test did not constitute just cause for discharging Shook, Arbitrator Cipolla sustained the grievance, stating that Shook was entitled to reinstatement and full back pay, less interim earnings and any unemployment compensation received.

## II.   SUMMARY JUDGMENT LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Federal Rule of Civil Procedure 56(c) provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment will not lie if a genuine dispute about a material fact is shown; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In ruling on a motion for summary judgment, the Court may not make credibility determinations, weigh the evidence, or draw inferences from the facts.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

To satisfy his initial responsibility, the movant must inform the court of the basis for his motion and must identify those portions of the record that he believes demonstrate the absence of

a genuine issue of material fact.  *Id.* at 1042.  Once the moving party has discharged the requisite evidentiary burden, the nonmovant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial."  *Id.*  (citations omitted).  If the nonmovant fails to produce such evidence, summary judgment in favor of the moving party is proper.  *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## III.    DISCUSSION

In its Motion, Kerry contends the arbitrator exceeded his authority when he concluded that the arbitral issue was whether "the Company had just cause to terminate the Grievant, not whether or not [Shook] should have been sent to Concerta for treatment" [ECF No. 14].  Kerry asks the Court to grant summary judgment in its favor and enter: 1) an order vacating only those portions of the Arbitration Award that (a) declared Kerry's use of drug testing as part of post-accident medical examinations to be a violation of the CBA, and (b) exceeded the arbitrator's jurisdiction by re-writing Kerry's policy governing post-accident medical examinations to prohibit drug testing without evidence of impairment; 2) a declaratory judgment pursuant to 28 U.S.C. § 2201, declaring that Kerry was deprived of a fair arbitration hearing, that challenged portions of the arbitration decision are void for public policy because they exceed the scope of the arbitral issues submitted by the parties; 3) an order requiring the arbitrator to issue a remedy consistent with his finding that Kerry's action in sending Shook to Concerta for medical treatment was consistent with the CBA and company policy, namely a remedy upholding Kerry's discharge of Shook; and 4) an order dismissing Union's counterclaim.

In its Motion for Summary Judgment on its Counterclaim, Union argues that the Arbitration Award must be upheld, because the award was based on, and "drew its essence" from, the plain reading and interpretation of the parties' CBA, and that the arbitrator acted within

the scope of his authority in construing and applying the CBA's terms in issuing his award. Union asks the Court to grant summary judgment in Union's favor, and against Kerry, on Union's Counterclaim, and to enter an order enforcing the Arbitration Award.

When federal courts review an arbitration award, they do not reexamine the merits of the parties' claims. *Lackawanna Leather Co. v. United Food & Commerical Workers Int'l Union, AFL-CIO & CLC, Dist. Union No. 271*, 692 F.2d 536, 538 (8th Cir. 1982). Courts must afford the arbitrator's decision deference if it "draws its essence" from the parties' collective bargaining agreement. *Id.* Nevertheless, this judicial deference does not "grant carte blanche approval to any decision that an arbitrator might make. *Id.* "An arbitrator can bind the parties only on issues that they have agreed to submit, and whether the arbitrator has exceeded those bounds is a proper issue for judicial determination." *Id.* Accordingly, courts may vacate labor arbitration awards when an arbitrator exceeds the scope of the submission by ruling on issues not presented to him by the parties. *Id.* at 538-39. Several factors are relevant to a court's determination of the scope of an arbitration decision, including: clarity and scope of the submission language; the parties' correspondence; description and discussion of the issues during arbitration; and evidence of confusion, uncertainty, or dissent in the record. *Id.* at 540 n. 5.

During the arbitration hearing, the parties mutually agreed that the only issue upon which the arbitrator would be ruling would be whether Shook should have been sent to Concentra. Although the more general question of whether Kerry had just cause to discharge Shook was before Arbitrator Cipolla in making this determination, review of the record reveals that the ground upon which Arbitrator Cipolla based his decision and award was not briefed or argued by either party at any time during, or after, the grievance process.

In the grievance filed on Shook's behalf, Union merely stated as his complaint that he was "terminated without proper cause" [ECF No. 1-3].  Kerry's official company answer to Shook's grievance concluded:

> Ron Shook had a work related injury; company sent Mr. Shook to Concentra for evaluation where he was also administered a post-accident drug test.  The result of Mr. Shook's drug test was positive.  Company policy states a positive test result is grounds for discharge.  Grievance is therefore denied.

[ECF No. 16-6 at 2].  Kerry's "3rd Step" Grievance answer stated: "Company followed policy regarding grievant's post-accident drug test.  Company policy states a positive test result is grounds for discharge.  Grievance is therefore denied" [ECF No. 16-6 at 3].  Although Union's initial grievance complaint was stated in extremely vague and broad terms, the parties' correspondence clarified the scope of the submission, revealing that Kerry's decision to send Shook off-site for treatment of his work-related injury was the disputed issue between the parties, and that the decision to send him to Concentra for evaluation was Union's basis for contesting Kerry's proper cause for termination.

Furthermore, the parties' description and discussion of the issues during the arbitration hearing establish that the issue they agreed to submit was limited to whether Shook should have been sent to Concentra.  During opening argument for the March 7, 2012 hearing, the parties stated the issue before the arbitrator as being whether the discharge was for just cause, and if not, what the remedy should be, explaining the main issue raised by Union during the course of the grievance procedure was that Shook's drug test result could not be considered as grounds for discharge, because Kerry should not have sent Shook to Concentra, as his wound did not require off-site medical treatment.   In fact, Union specifically stated:

> The Company's policy, their words, is that they can send somebody or do a post accident test if the injury or illness required off site medical treatment.  The case is really that simple.  You would not have gone to seek medical treatment, you

9

would have not have taken a grandchild to seek medical treatment.  This grievant
should not have been sent for medical treatment.  Therefore, the positive test
should be thrown out because the grievant shouldn't have been there in the first
place.  And we'll ask -- in the end I'm sure we'll submit briefs and so on and so
forth, that you sustain the grievance, put the Grievant back to work with seniority
and be made whole.

[ECF No. 16-7 at 3-4].  Kerry asserted that its position was "that the wound did require

treatment, that the Plant Superintendent made a judgement (sic) call which was reasonable and

correct, and cannot be second guessed after the fact for an employee to go seek medical

treatment" [ECF No. 16-7 at 3].  At no point during the grievance proceeding did Union argue

that Kerry's Policy violated the CBA's "just cause" provision by adopting an unreasonable

provision requiring drug testing of an employee solely because an employee incurred a work-

related injury.

The hearing transcript also shows the lack of uncertainty or dissent between the parties as

to the scope of the submission.  During Kerry's examination of witness Black, Shook's counsel

objected to questioning concerning statements Shook made to Black about Shook's drug use

prior to his testing, stating:

I'm going to object at this point.  You know, I didn't bring it up ahead of time
because I didn't think there was any need to.  But I've already acknowledged that
there will be no problem with admitting the drug screen results, that there would
be no – no need for any other testimony, the chain of custody, nothing else, that
we acknowledge it.  So I'm not sure what all this is about.

[ECF No. 16-7 at 13-14].  In response to Shook's objection, Kerry stated: "This is about the

process that goes into the decision to discharge.  Are you saying that the only issue is that he

shouldn't have been tested, but otherwise if he should have been tested because we had the right

to send him for treatment, that you're saying that the discharge then was appropriate?"  When

Union asked Kerry to repeat its question, Kerry said:

10

> I just want to make sure.  Because if the argument is that – only that he should
> never have been sent to the clinic in the first place, and therefore, should not have
> been tested, and that if the Arbitrator finds that he should have been sent to the
> clinic, then the Union is not contesting the discharge after that?  That's a positive
> test and he should have been discharged?  Or is there going to be anything in your
> argument or is the Arbitrator going to get to rule on anything beyond that
> particular issue?

[ECF No. 16-7 at 14].  Union responded, "No.  Our case is that he should not have been sent.

I've acknowledged and I did it to you personally that we accept the drug screen results as

positive" [ECF No. 16-7 at 14].  Kerry then stated, "Okay.  But – and you have.  And I just didn't

know, because that doesn't mean that you can't make other argument about mitigation or not his

fault it was positive.  You know, I didn't know if there were other excuses that were going to be

coming in for the test" [ECF No. 16-7 at 14].  Union responded, "None whatsoever."  After

Arbitrator Cipolla voiced his acceptance and understanding of the parties' discussion, Kerry said,

"Okay.  So then we don't need any testimony about the discharge or any of this.  This is all -- the

only issue that we have before is whether he should have been sent for the test[,]" and Union

responded, "Yes" [ECF No. 16-7 at 14].  The Court finds that the parties' description and

discussion of the submission issue during arbitration establishes that the sole issue the parties

agreed to submit was whether Kerry's decision to send Shook off-site for medical treatment was

in accordance with Kerry's Policy.

      In its post-grievance-hearing brief [ECF No. 16-8], Union began by stating the issue

before the arbitrator to be "[w]hether the Employer had just cause to discharge the Grievant, and

if not, what shall the remedy be?"  Union then asserted that Kerry's burden to prove it had just

cause to discharge Shook required Kerry to prove by clear and convincing evidence: 1) that

Shook committed the wrongful act for which discipline was imposed, and 2) that the penalty

assessed for the wrongful act was proportionate and appropriate to the wrongful act.  Union again

11

argued that Shook's injury did not require off-site medical treatment, and that Kerry violated its Policy by sending Shook to Concerta for an injury that did not warrant off-site medical treatment. Union contended that because there was no justification for having Shook submit to a drug test under Kerry's Policy, "there was no justification for the discharge because there should never been a drug test taken."

In the Statement of Facts in its post-hearing brief, Kerry asserted, "It is undisputed and uncontested that the Employer conducts and has the right to conduct drug/alcohol tests on employees who have "a work-related illness or injury that causes lost time or requires off-site medical treatment . . ." [ECF No 16-9 at 7].  In the Argument portion of its brief, Kerry stated, "The Union has conceded to the reasonableness of the policy governing post-accident drug tests and is not contesting the outcome of the drug test or even any Employer action based on such a test.  Instead, the Union only contends that in this instance, the Company should not have sent the Grievant for medical treatment" [ECF No. 16-9 at 15].  Kerry asserted that the Union failed to rebut the testimony of the doctor who treated Shook's wound and who testified that the injury required off-site medical treatment.  Kerry argued that its decision to send Shook off-site for medical treatment was reasonable, that the arbitrator should not substitute his judgment concerning the appropriate form of discipline for that of Kerry unless the company had acted arbitrarily or unreasonably, and that the hearing evidence established that Kerry properly sent Shook for medical treatment.

In his Arbitration Decision and Award, Arbitrator Cipolla set forth the positions of both parties.  In his record of Union's position, Arbitrator Cipolla noted, "The Union believes that this was an obvious case of an injury that did not require off-site medical treatment" [ECF No. 16-10 at 12].  The arbitrator further recorded the Union's belief that the Company violated its own

standard for drug-testing an employee with an injury because Shook's injury did not require off-site medical treatment, and that the lack of justification for sending Shook to Concentra caused the administration of the drug test to be unjustified.  He summed up Union's position by stating that Kerry violated the CBA by discharging Shook without just cause, and explained: "The Grievant was discharged for failing a drug test he should have never been given since the Drug and Alcohol policy clearly states that a drug test should be given when an employee has a work-related injury that requires off-site medical attention and this injury clearly did not require off-site medical treatment, and could have been tended to at the plant."

> Arbitrator Cipolla also summarized Kerry's position, stating:
>
> The Company had the right to send the Grievant for medical treatment for the following reasons:  the Grievant had a cut/laceration on his finger that transversed the width of his finger and warranted medical treatment as confirmed by the treating doctor; the CBA between the parties does not establish any set criteria or minimum standards for determining when a person should be sent for treatment; and requiring the Company to make medical decisions in even arguably borderline cases puts employees' health at risk.

ECF No. 16-10 at 7].

After clearly articulating the parties' description of the issue before him, however, Arbitrator Cipolla proceeded to exceed the bounds of the parties' submission by ruling on an issue not presented to him; that is, whether a work-related injury requiring off-site medical attention, standing by itself, with no evidence of impairment, validates post-accident drug testing. Arbitrator Cipolla began the Discussion and Decision portion of his Decision and Award by saying: "The CBA contains a 'just cause' provision.  The issue in this case is whether the Grievant was discharged for 'just cause'" [ECF No. 16-10 at 13].  After stating the operative facts, Arbitrator Cipolla found it particularly noteworthy that the record lacked any evidence "whatsoever that the Grievant was impaired or appeared to be impaired on September 15, 2011"

[ECF No. 16-10 at 13].  He then rejected the issue as posited by the parties, and opined, "It appears to me that given the 'just cause' standard in the CBA, the issue before me is whether the Company had just cause to terminate the Grievant, not whether or not he should have been sent to Concentra for treatment" [ECF No. 16-10 at 14].

After a brief discussion of arbitral authority, Arbitrator Cipolla remarked, "In summing up, it appears many arbitrators do not believe that an accident, standing by itself, validates drug testing.  These arbitrators view this kind of policy as a 'due process' violation of the 'just cause' standard and some view it as an unwarranted invasion of privacy" [ECF No. 16-10 at 14]. Although Abitrator Cipolla found that sending the Grievant to Concentra did not appear to be an arbitrary or capricious decision by management, and did "not rise to any level of abuse of managerial discretion," he also opined that "the decision to drug test the Grievant does not appear to be related to any workplace safety issue" [ECF No. 16-10 at 15].  He further found no "rational relationship between the incident triggering the test and the possibility of drug use as a factor" [ECF No. 16-10 at 15].  Arbitrator Cipolla concluded that he found that "the administration of the drug test in this particular case was unreasonable and uncalled for under all the relevant circumstances.  The result of the test then does not constitute just cause for discharging the Grievant, and I so find" [ECF No. 16-10 at 15-16].

Adequate notice of the arbitral issues is a prerequisite to a fundamentally fair arbitration hearing. *Lackawanna Leather Co.*, 692 F.2d at 540.  Lack of sufficient notice effectively denies parties the opportunity to prepare and present their case at arbitration.  *Id.*  As previously stated, the ground upon which Arbitrator based his decision and award was not briefed or argued by either party at any time during, or after, the grievance process.  Neither side apparently raised any issue or presented any evidence on whether the administration of the drug test in Shook's case

was unreasonable and uncalled for due to the lack of a rational relationship between Shook's injury and the possibility of drug use as a factor in his accident; or whether Shook's positive result proved that he was impaired when the injury occurred, or that he presented immediate workplace safety concerns.  In fact, the hearing transcript shows that Union objected when Kerry began eliciting testimony from Black regarding statements made by Shook concerning his drug use prior to his shift and the process that was involved in Shook's discharge.  When Kerry inquired if the arbitrator would be ruling on anything beyond the issue that Shook should not have been sent off-site, Union assured Kerry that the only issue was that Shook should not have been sent.  Union agreed that additional testimony about the discharge was unnecessary and indicated that it would not "waste the Arbitrator's time" with any other arguments.

    The record reveals that the parties agreed that the only issue submitted for the arbitrator's ruling was whether Shook's injury required off-site medical treatment.  On that issue, Arbitrator Cipolla found that the decision to send Shook to Concentra was neither "an arbitrary or capricious decision by management nor [did] it rise to any level of abuse of managerial discretion" [ECF No. 16-10 at 15].  The undisputed material facts show that Shook suffered a work-related injury that required off-site medical treatment, and that Kerry's Policy clearly informs employees that "Kerry will test current employees, unless otherwise prohibited by state law, for alcohol, drugs, and controlled substances" when they have a work-related injury requiring off-site medical treatment.  The undisputed material facts also show that the results of the drug test administered to Shook by Concentra yielded positive results for the presence of marijuana in Kerry's system.  Kerry's policy states that a positive test result that is not satisfactorily explained by the employee "will result in discharge on the first offense, unless otherwise prohibited by state law" [ECF No. 16-4 at 2].  Arbitrator Cipolla's finding concerning

15

the decision to send Shook to Concentra necessitates a conclusion that Kerry's action was consistent with the Policy, that the administration of the post-accident drug test was proper under the circumstances, and that Kerry had just cause to discharge Shook.  The record shows that Union did not challenge the reasonableness of Kerry's policy governing post-accident drug tests, and did not contest the test result.  Union simply argued that Shook's positive drug test result should be thrown out because he should not have been sent off-site for medical treatment.

The Court finds that the only issue submitted to arbitration was whether Shook's injury required off-site medical treatment.  The issue of whether a work-related injury requiring off-site medical attention, standing by itself, validates drug testing was not submitted to Arbitrator Cippolla.  Nor was he asked to consider whether Kerry's decision to drug test Shook was rationally related to any workplace safety issue, or whether drug use was a factor in his accident.  Arbitrator Cipolla exceeded the boundary the parties marked out for his consideration.

Furthermore, the grievance process here is subject to the terms of the parties' CBA, which is effective, by its terms, from January 20, 2011 through January 19, 2014 [ECF No. 16-3].  Article 7 of the parties' CBA addresses the sole and exclusive rights of Kerry in the management of its business and the direction of the its working force, including, but not limited to, the right to discipline, suspend, or discharge an employee, for just cause, and the right to maintain order and efficiency [ECF No. 16-3 at 3-4].  This provision also states that "the exercise of all managerial rights which the Company had prior to the signing of this Agreement, are all vested solely and exclusively in the Company, unless specifically limited or modified by the provisions of this Agreement" [ECF No. 16-3 at 4].  Article 8 of the CBA defines a grievance as any dispute between the parties "concerning the effect, interpretation, application, claim of breach or violation" of the CBA.  This article outlines the Grievance and Arbitration Procedure, and

16

expressly limits the authority of an arbitrator to modify its terms: "The arbitrator shall have no power to add to or subtract from, change or modify any of the terms of this Agreement" [ECF Nos. 5-2 at 8, 16-3 at 6].

The parties' pleadings and responses show undisputedly that Kerry's Policy was in effect "at all times relevant to this lawsuit." The record also undisputedly establishes that the Policy provides for post-accident drug testing when a work-related injury requires off-site medical treatment, and that a positive test result, not satisfactorily explained, would result in discharge on the first offense. As noted above, Article 7 reserves to Kerry, the sole and exclusive right to maintain order and efficiency in the management of its business and the direction of its working force. Such a right clearly encompasses the maintenance of "a productive work environment that is free from the effects of alcohol and other drugs." In the Arbitrator's own words:

> It is axiomatic that the main purpose of an employer drug and alcohol policy is to prevent the use of such products at work and also any impairment at work that results from the use of drugs and/or alcohol at work or away from work. It is a paramount safety issue for employers. The Company's policy states as much.

[ECF No. 16-10 at 14-15]. Consequently, because the CBA would not authorize an arbitrator to add to or subtract from, change or modify any of its terms, the Court finds that Arbitrator Cipolla's ruling encroaches upon Kerry's right to maintain order and efficiency in the management of its business and the direction of its working force. As such, the ruling does not "draw its essence" from the parties' CBA.

Accordingly, the portion of the arbitration decision that declared Kerry's post-accident drug testing of Shook, in the absence of evidence of impairment, drug use as a factor in the accident, or workplace safety issues, "uncalled for" and "unreasonable" is null and void. Furthermore, that part of the arbitration award reinstating Shook and awarding him full back pay, less interim earnings and any unemployment compensation received, is null and void. The Court

will deny Union's Motion for Summary Judgment [ECF No. 18].  The Court will grant Kerry's

Motion for Summary Judgment [ECF No. 14].

Accordingly,

**IT IS HEREBY ORDERED** that Defendant United Food and Commercial Workers,

Local Union No. 88's Motion for Summary Judgment [ECF No. 18] is **DENIED**.

**IT IS FURTHER ORDERED** that Union's Counterclaim [ECF No. 5] is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff Kerry, Inc.'s Motion for Summary

Judgment [ECF No. 14] is **GRANTED**.  The portion of the Arbitration Decision and Award that

declared Plaintiff Kerry, Inc.'s post-accident drug testing of Grievant Ron Shook "uncalled for"

and "unreasonable" in the absence of evidence of impairment is null and void, as it exceeds the

scope of the arbitral issue submitted by the parties, and is **VACATED.**  Furthermore, that part of

the award reinstating Grievant Ron Shook and awarding him full back bay, less interim earnings

and any unemployment compensation received, is **VACATED**.

**IT IS FURTHER ORDERED** that the arbitrator shall issue a remedy consistent with his

finding that Plaintiff Kerry, Inc.'s action in sending Grievant Ron Shook to Concentra was

consistent with the CBA and company policy.

Dated this __30th__ day of April, 2013.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE